# In the United States Court of Appeals for the Ninth Circuit

LaWanda D. Small, Individually, and on Behalf of the Class,

*Plaintiff-Appellee*

v.

Allianz Life Insurance Company of North America, a Minnesota Corporation

*Defendant-Appellant.*

On Appeal from the United States District Court
for the Central District of California
Civil No. 2:20-cv-01944-TJH-KES
The Honorable Terry J. Hatter, Jr.

## PRINCIPAL BRIEF ON APPEAL

Aaron Van Oort
Faegre Drinker Biddle & Reath LLP
2200 Wells Fargo Center, 90 South 7th St.
Minneapolis, MN 55402
Telephone: (612) 766-7000
Aaron.vanoort@FaegreDrinker.com

Mark D. Taticchi
Faegre Drinker Biddle & Reath LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Mark.Taticchi@FaegreDrinker.com

Stephen J. Jorden
Faegre Drinker Biddle & Reath LLP
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 842-8800
Stephen.Jorden@FaegreDrinker.com

*Counsel for Defendant-Appellant Allianz Life Insurance Company of North America*

# CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, undersigned counsel states as follows:

Allianz Life Insurance Company of North America ("Allianz Life") is a Minnesota domestic insurance company and part of the Allianz Group holding company organization.

Allianz Life is a wholly owned subsidiary of Allianz of America, Inc. ("AZOA"), a Delaware corporation. AZOA is a wholly owned subsidiary of Allianz Europe, B.V., a private limited liability company registered in the Netherlands, which is a wholly owned subsidiary of Allianz Societas Europaea (Allianz SE), incorporated in Munich, Germany, the ultimate controlling entity for the Allianz Group.

# **TABLE OF CONTENTS**

**Page**

CORPORATE DISCLOSURE STATEMENT ............................................................... i

TABLE OF AUTHORITIES ............................................................................ iv

INTRODUCTION ........................................................................................... 1

JURISDICTIONAL STATEMENT ...................................................................... 5

STATEMENT OF ISSUES ON APPEAL ............................................................ 6

STATEMENT OF THE CASE ........................................................................... 7

    I.     The Statutes ....................................................................................... 7

    II.    When life insurance policies lapse, it is commonly because the owners let them lapse on purpose ................................................ 9

    III.   Procedural History ......................................................................... 14

         A.    The Small Policy and Plaintiff's Complaint ..................... 14

         B.    Class Certification ............................................................. 17

              1.    Plaintiff's Motion for Class Certification ............... 17

              2.    The District Court's Class Certification Order ..... 18

         C.    The District Court's Summary Judgment Ruling ............ 21

SUMMARY OF ARGUMENT ......................................................................... 22

LEGAL STANDARD .................................................................................... 24

ARGUMENT ............................................................................................... 25

    I.     Class certification should be reversed because the district court erred in holding that Rule 23's commonality, predominance, and superiority requirements were satisfied. ...................................... 25

         A.    The district court did not identify any truly common question, as Rule 23(a)(2) requires ..................................... 25

         B.    Common questions do not predominate in the Beneficiary Subclass, as Rule 23(b)(3) requires. ................................. 27

         C.    The Statutes do not prescribe a perpetual coverage remedy for each statutory violation or excuse proof of injury, causation and other elements of each subclass member's claims ................................................................................. 32

II.     Class certification should be reversed because the district court erred in finding that Plaintiff was typical of all class members and adequate to represent them. ..........................................................36

     A.     Plaintiff is not typical of either owners or beneficiaries who allege different statutory violations or whose policies were intentionally terminated.....................................................36

     B.     Plaintiff is not typical of or adequate to represent the subclass of owners of policies with Living Insureds because she is not a member of that subclass and is not entitled to the relief it seeks. ..................................................39

III.    The Rule 23(b)(2) subclass of Living Insureds should be decertified because the members are not entitled to indivisible injunctive relief. ..............................................................42

IV.    In the alternative, this Court should decertify the classes because the district court violated the one-way intervention rule..........................46

CONCLUSION ....................................................................................................50

FORM 17. STATEMENT OF RELATED CASES PURSUANT TO CIRCUIT RULE 28-2.6 ...............................................................51

FORM 8. CERTIFICATE OF COMPLIANCE FOR BRIEFS ...................52

CERTIFICATE OF SERVICE FOR ELECTRONIC FILING .................53

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Am. Pipe & Constr. Co. v. Utah,*
    414 U.S. 538 (1974) ...................................................................................46

*Amati v. City of Woodstock,*
    176 F.3d 952 (7th Cir.), *cert. denied*, 528 U.S. 985 (1999) ..............................47

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997) ..................................................................... 27, 39, 40

*Behniwal v. Mix,*
    147 Cal. App. 4th 621 (2007) ........................................................................44

*Betts v. Reliable Collection Agency, Ltd.,*
    659 F.2d 1000 (9th Cir. 1981) ................................................................. 39, 40

*Bowerman v. Field Asset Servs., Inc.,*
    60 F. 4th 459 (9th Cir. 2023) ......................................................................28

*Campion v. Old Republic Home Prot. Co.,*
    272 F.R.D. 517 (S.D. Cal. 2011) ..................................................................30

*Castillo v. Bank of Am., NA,*
    980 F.3d 723 (9th Cir. 2020) ......................................................................24

*Cholakyan v. Mercedes-Benz USA, LLC,*
    281 F.R.D. 534 (C.D. Cal. 2012) ..................................................................46

*Costello v. BeavEx, Inc.,*
    810 F.3d 1045 (7th Cir. 2016) ................................................................ 47, 49

*Darbun Enters, Inc. v. San Fernando Cmty. Hosp.,*
    239 Cal. App. 4th 399 (2015) ........................................................................44

*E. Tex. Motor Freight Sys., Inc. v. Rodriguez,*
    431 U.S. 395 (1977) ..................................................................................38

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ............................................................40, 43, 45

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011) ..................................................................................27

*Gen. Tel. Co. of Sw. v. Falcon*,
   457 U.S. 147 (1982) ............................................... 36, 37, 38, 39

*Gonzales v. Arrow Fin. Servs. LLC*,
   489 F. Supp. 2d 1140 (S.D. Cal. 2007), *aff'd.*, 660 F.3d 1055 (9th Cir.
   2011) ..........................................................................................49

*Granberry v. Islay Invs.*,
   9 Cal. 4th 738 (1995) ...........................................................................33

*Guerra v. Sutton*,
   783 F.2d 1371 (9th Cir. 1986) .................................................. 43, 45

*Hesse v. Sprint Corp.*,
   598 F.3d 581 (9th Cir. 2010) ...............................................................40

*Howard v. Cook Cnty. Sheriff's Off.*,
   989 F.3d 587 (7th Cir. 2021) ...............................................................25

*Isaacs v. Sprint Corp.*,
   261 F.3d 679 (7th Cir. 2001) ...............................................................49

*Jamie S. v. Milwaukee Pub. Schs.*,
   668 F.3d 481 (7th Cir. 2012) ...............................................................45

*Kartman v. State Farm Mut. Auto. Ins. Co.*,
   634 F.3d 883 (7th Cir. 2011) ...............................................................45

*Kihn v. Bill Graham Archives LLC*,
   No. 20-17397, 2022 WL 18935 (9th Cir. Jan 9, 2022) .................................46

*Kim v. Allison*,
   87 F.4th 994 (9th Cir. 2023) ................................................... 6, 24

*Lara v. First Nat'l Ins. Co. of Am.*,
   25 F.4th 1134 (9th Cir. 2022) ................................................ 27, 31

*In re LifeUSA Holding Inc.*,
   242 F.3d 136 (3d Cir. 2001) ................................................................25

*McHugh v. Protective Life Ins.*,
2022 WL 6299640 (Cal. Ct. App. Oct. 10, 2022) (unpublished) ...............................35

*McHugh v. Protective Life Ins.*,
40 Cal. App. 5th 1166 (2019) ........................................................................................9

*McHugh v. Protective Life Ins. Co.*,
494 P.3d 24 (Cal. 2021) ........................................................................................*passim*

*Oasis W. Realty, LLC v. Goldman*,
250 P.3d 1115 (Cal. 2011) ............................................................................................27

*Pulaski & Middleman, LLC v. Google, Inc.*,
802 F.3d 979 (9th Cir. 2015) ........................................................................................24

*Schwarzschild v. Tse*,
69 F.3d 293 (9th Cir. 1995) ..........................................................................................48

*Sprogis v. United Air Lines, Inc.*,
444 F.2d 1194 (7th Cir. 1971) (Stevens, J., dissenting) ................................................47

*Steen v. Am. Nat'l Ins. Co.*,
No. 20-cv-11226, 2023 WL 4004192 (C.D. Cal. June 14, 2023) ..................33, 34, 38

*Tamarind Lithography Workshop, Inc. v. Sanders*,
143 Cal. App. 3d 571 (1983) ........................................................................................44

*Thomas v. State Farm Ins. Co.*,
424 F. Supp. 3d 1018 (S.D. Cal. 2019) ........................................................................35

*Thomas v. State Farm Life Insurance Co.*,
No. 20-55231, 2021 WL 4596286 (9th Cir. Oct. 6, 2021) ...........................................35

*Troyk v. Farmers Group, Inc.*,
171 Cal. App. 4th 1305 (2009) .....................................................................................27

*Tyson Foods, Inc. v. Bouaphakeo*,
577 U.S. 442 (2016) ......................................................................................................26

*United States v. Hinkson*,
585 F.3d 1247 (9th Cir. 2009) (en banc) ......................................................................24

*Victorino v. FCA US LLC*,
326 F.R.D. 282 (S.D. Cal. 2018) .............................................................................45, 46

*Villa v. San Francisco Forty-Niners, Ltd.*,
 104 F. Supp. 3d 1017 (N.D. Cal. 2015) ........................................................48

*Wal-Mart Stores, Inc. v. Dukes*,
 564 U.S. 338 (2011) .....................................................................*passim*

*Walt Disney Parks & Resorts U.S., Inc. v. Superior Ct.*,
 21 Cal. App. 5th 872 (2018) ...................................................................33

*Ziglar v. Abbasi*,
 582 U.S. 120 (2017) ..............................................................................34

*Zinser v. Accufix Research Inst., Inc.*,
 253 F.3d 1180 (9th Cir. 2001), *amended*, 273 F.3d 1266 (9th Cir. 2001) ...................28

## STATUTES, RULES & REGULATIONS

28 U.S.C. § 1292(e) ...........................................................................5

28 U.S.C. § 1332(d)(2) ........................................................................5

Cal. Ins. Code § 10113.71 ..............................................................*passim*

Cal. Ins. Code § 10113.72 ..............................................................*passim*

Fed. R. Civ. P. 9(b) ........................................................................16

Fed. R. Civ. P. 23 ....................................................................*passim*

Fed. R. Civ. P. 23(a) ..............................................................6, 19, 25, 27

Fed. R. Civ. P. 23(a)(2) ....................................................................25

Fed. R. Civ. P. 23(a)(3) ....................................................................36

Fed. R. Civ. P. 23(a)(4) ....................................................................39

Fed. R. Civ. P. 23(b) .........................................................................6

Fed. R. Civ. P. 23(b)(2) ...............................................................*passim*

Fed. R. Civ. P. 23(b)(3) ...............................................................*passim*

**OTHER AUTHORITIES**

2 W. Rubenstein, Newberg on Class Actions § 4:50, (5th ed. 2012)................................26

7A Fed. Prac. & Proc. Civ. § 1764 (4th ed.)........................................................................36

7AA Fed. Prac. & Proc. Civ. § 1776.1 (3d ed.)..................................................................42

# INTRODUCTION

The record in this case, and data maintained by life-insurance industry stakeholders generally, shows that when life insurance policies lapse, it is usually because policyholders desire that result. For term policies, for example, lapses are common around the end of the specified term (typically 10, 20, or 30 years) because the owners know that premiums will increase sharply thereafter.

Still, when life-insurance policies lapse inadvertently, the loss of coverage can significantly affect both the policyholders and their intended beneficiaries. To make the uncommon event of inadvertent lapse even less common, the California legislature enacted California Insurance Code Sections 10113.71 and 10113.72 (collectively referred to as the "Statutes") in 2013. Taken together, the Statutes added five new notice and grace-period requirements. In 2021, the California Supreme Court held that policies issued before 2013 were governed by the 2013 amendments, reversing a 2019 California Court of Appeal's decision to the contrary. *See McHugh v. Protective Life Ins. Co.*, 494 P.3d 24 (Cal. 2021).

The Statutes do not provide a private right of action, so parties who claim statutory violations must raise them indirectly through breach-of-contract and other claims.

In the decision below, the district court certified under Federal Rule of Civil Procedure 23 two subclasses to litigate declaratory judgment, contract and UCL claims based on allegations that Allianz Life did not meet one or more of the five

requirements with respect to life insurance policies that were issued before 2013 but remained in force through that date or later. Both subclasses involve policies that were administratively assigned status codes in Allianz Life's computer systems indicating that a lapse occurred. The first subclass is owners of policies with living insureds, seeking declaratory relief under Rule 23(b)(2) ("Living Insured Subclass"). The second subclass is designated beneficiaries of terminated policies where the insured is deceased, pursuing breach of contract claims for policy death benefits under Rule 23(b)(3) ("Beneficiary Subclass").

There are many reasons why class certification was improper, but here is the most fundamental one: Most of the policies included in the classes were lapsed or terminated because their owners chose to do so on purpose. For the owners and beneficiaries of these policies, proving that a notice or grace-period violation under the Statutes caused them any injury will be impossible. Certainly, the owners and beneficiaries of intentionally terminated policies cannot be lumped together with owners and beneficiaries whose policies lapsed inadvertently and for whom technical compliance with the Statutes' notice and grace period provisions would have prevented that lapse. And separating these groups turns on individual inquires that preclude a finding of commonality for both subclasses and defeat predominance for the Beneficiary Subclass.

Certification was improper for other reasons as well. The Statutes impose five requirements, but the subclasses are not limited to members who share a common

alleged violation. Instead, they mix and match different alleged violations. That, too, defeats commonality and further undermines predominance. For example, the lone named representative of both subclasses, Plaintiff LaWanda Small, alleges only a single violation—of the requirement to remind the policy owner of the right to designate a third-party to receive policy-related notices. Small therefore is not typical of, or adequate to represent, class members who assert violations of one or more of the four other statutory requirements. Small also is not a member of, and cannot adequately represent, the Living Insured Subclass. The insured on her policy is deceased. She is a member of the Beneficiary Subclass only.

Certification of the Living Insured subclass is also inappropriate because the only relief that subclass seeks is a declaration that Allianz Life violated some provision of the Statutes, and such a declaration would not materially advance the claims of the owners of terminated policies that still have Living Insureds. Owners who knowingly allowed their policies to terminate or affirmatively requested termination suffered no injury. The district court believed that reinstating all terminated policies to in-force status would follow from the declaration, but it would not. Reinstatement would equate to granting specific-performance, which would require members to prove the elements of their breach of contract and UCL claims in individualized proceedings. Plaintiff's argument that any violation of the Statutes, without proof of injury or causation, mandates perpetual insurance and premium payments despite the choice of an owner to stop paying and surrender a policy (because, for example, the owner got a

different one) is not only erroneous but is based on statutory text not connected to the sole statutory violation upon which Plaintiff rests her claims.

The district court did not engage with these issues. It did not even mention the elements of the underlying breach of contract cause of action, much less analyze how the elements could be proved with evidence common to each class member. And it all but ignored the evidence indicating—and sometimes clearly showing—absence of injury and causation. Rather than face these hurdles head on, it instead dismissed these core questions of ***liability*** as nothing more than the presence of "individualized ***damages***." 1-ER-17 (emphasis added). That was a legal error.

After certification, the district court compounded these errors. Shortly after the court's order, the parties filed cross-motions for summary judgment as required by the pretrial scheduling order. To avoid a one-way intervention problem, ***both parties*** asked the district court not to rule on those motions until after class notice had been sent and the opt-out period had closed. Ignoring the parties' request, the court granted partial summary judgment to ***both*** parties—to Allianz Life on its limitations defense (thereby significantly truncating the class period) and the UCL claim, and to Plaintiff and the subclasses on the breach of contract and declaratory relief claims. In doing so, the court created the very conundrum that both parties had asked it to avoid—a classic one-way intervention violation where class members can choose whether to participate in the litigation based on knowing how it turns out.

If this Court holds that the classes cannot be certified in any event, that holding will moot the one-way intervention error. But if the Court does not decertify the classes for failing to meet Rule 23, the most appropriate remedy for the district court's manifest one-way intervention error is to decertify the class and preclude any future efforts to certify one in this case. That relief will not harm either Plaintiff (whose individual action may proceed) or absent class members, who may still bring their own individual claims or have their claims pursued via a newly instituted class action with a different class representative and a different judge where the outcome is not known.

## JURISDICTIONAL STATEMENT

The district court had original jurisdiction under 28 U.S.C. § 1332(d)(2), which grants district courts original jurisdiction over any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 and is a class action in which any member of the class is a citizen of a State different from any defendant: Plaintiff LaWanda Small is a citizen of California, and Allianz Life is a citizen of Minnesota, under whose laws it is organized and where its principal place of business is located. The district court entered its order granting class certification on May 23, 2023, and Allianz Life timely filed a Rule 23(f) petition for permission to appeal on June 6, 2023. This Court granted the petition on September 29, 2023. This Court has appellate jurisdiction pursuant to 28 U.S.C. § 1292(e) and Rule 23(f) of the Federal Rules of Civil Procedure.

# STATEMENT OF ISSUES ON APPEAL

1.      Whether the district court, in certifying two classes under Federal Rule of Civil Procedure 23, erred in finding that Plaintiff demonstrated that both subclasses satisfied the commonality, typicality, and adequacy requirements of Rule 23(a), and the predominance and appropriateness-of-relief requirements of Rule 23(b), where: each subclass is comprised of claimants alleging one or more of five distinct procedural violations; contains many individuals who were in no way harmed by the alleged statutory violations; and would require individualized proceedings to both establish liability and determine the proper remedy for each claimant.

2.      Whether the district court rigorously analyzed the requirements of Rule 23(a) and (b), as required by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) and *Kim v. Allison*, 87 F.4th 994, 999–1000 (9th Cir. 2023), in light of all the elements of the claims and defenses at issue and the parties' submissions during class certification briefing.

3.      Whether the district court erred in appointing Plaintiff to represent a subclass of living policy owners of which she is not a member and whose members are pursuing relief to which Plaintiff is not entitled.

4.      In the alternative, whether the district court's summary judgment order violated the prohibition on one-way intervention—and, if so, whether, in

the event the Court does not decertify the subclasses for failing to meet Rule 23, this Court should remedy that violation by decertifying the class and precluding any future efforts to certify one in this case.

## STATEMENT OF THE CASE

### I.     The Statutes

This case presents claims based on two statutes that took effect on January 1, 2013, California Insurance Code sections 10113.71 and 10113.72.  The Statutes introduced five new requirements for grace periods and notices, all designed to ensure that, if policyholders let their life insurance policies lapse due to unpaid premiums, they do it knowingly.  *See McHugh*, 494 P.3d at 45 (Cal. 2021) (observing that the Statutes were enacted to "protect[] people who hold life insurance policies from inadvertently losing them.)  The five new requirements are:

1.     __A 60-Day Grace Period.__  Section 10113.71(a) requires life insurers to afford policy owners a 60-day grace period during which the policy cannot be terminated for unpaid premiums, giving owners additional time to pay forgotten premiums.  Cal. Ins. Code § 10113.71(a).

2.     __Notice Within 30 Days of Unpaid Premium.__  Section 10113.71(b)(3) requires life insurers to mail notice of unpaid premium (an "Unpaid Premium Notice") to the policy owner and any backup recipient she has designated to receive such notices within 30 days after premium is due and unpaid, which the Statute

clarifies means that the 60-day grace period "cannot run concurrently with the period of paid coverage." Cal. Ins. Code § 10113.71(a).

3. **Notice at Least 30 Days Before Effective Date of Termination**.

Section 10113.71(b)(1) requires life insurers to mail notice of an impending lapse at least 30 days before the effective termination (a "Pre-Termination Notice"). Like the Unpaid Premium Notice required by Section 10113.71(b)(3), the notice required by Section 10113.71(b)(1) must be sent to the policy owner and any backup recipient she has designated. "[I]f no notice recipient has yet been designated," then "the provisions requiring notice to the designee [in § 10113.71(b)(1) and (b)(3) and § 10113.72(c)] are simply ineffective." *McHugh*, 494 P.3d at 40.

4. **Right to Designate a Backup Recipient at Time of Application**.

Section 10113.72(a) requires life insurers to give policy owners an opportunity at the time of application to designate a third party to receive lapse-related notices. Cal. Ins. Code § 10113.72(a) ("An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person [to receive such notices].."); *McHugh*, 494 P.3d at 38-39 (explaining that section 72(a) "applies only to new postenactment policies").

5. **Annual Reminders of Right to Designate**. Section 10113.72(b) requires life insurers to send a reminder to policy owners, at least once a year, that they have the right to make (and change) such third-party designations ("Annual Reminders"). Cal. Ins. Code § 10113.72(b).

Although the California Court of Appeal initially held that these statutory provisions did not apply to policies issued before 2013, *McHugh v. Protective Life Ins.*, 40 Cal. App. 5th 1166, 1177 (2019), the California Supreme Court reversed that ruling in 2021, holding that "sections 10113.71 and 10113.72 apply to all life insurance policies in force when these two sections went into effect, regardless of when the policies were originally issued." *McHugh*, 494 P.3d at 27.

## II. When life insurance policies lapse, it is commonly because the owners let them lapse on purpose.

Allianz Life offers a range of life insurance products with varying terms and features. For example, universal life and variable universal life insurance policies provide permanent life insurance coverage with flexible premiums, provided that the policy owner maintains a policy value sufficient to cover monthly costs and deductions. *See* 3-ER-472. Most of the Allianz Life life insurance policies at issue are universal life policies, and all of them afford contractual grace periods of at least 60 days. 4-ER-721 at ¶44. In addition, at all times since February 2013, Allianz Life has used procedures for all universal life policies designed to ensure that pre-termination notices and unpaid premium notices were mailed within at least 30 days after the beginning of the grace period and more than 30 days before the effective date of termination. 4-ER-721 at ¶44.

Term life policies, on the other hand, offer coverage with a fixed schedule of premiums for a specified period (the "term") and typically contain contractual options

to continue coverage after the initial term, but with significantly higher premiums. 3-ER-470-471. For term life, Allianz Life's pre-2013 policies all provided grace periods of at least 30 days, although the company sometimes extended that period 30 days or more for policies that were subject to California Department of Insurance mandates or requests, such as those arising from emergencies, including COVID-19 and California wildfires. 4-ER-721 at ¶45.

The sample factual record in this case contains substantial evidence that most policy lapses were knowing and intentional. For example, Allianz Life submitted an unrebutted expert report from Professor Craig Merrill. Professor Merrill reviewed industry and academic research into why life insurance policies lapse and also assessed a random sample of Allianz Life policy files and associated data. He concluded that, when policyholders stop paying premiums and let their policies lapse, it typically reflects an "economically rational decision made deliberately by . . . a policyholder to discontinue their coverage." 3-ER-465-466; *see also* 3-ER-476-484 (discussing surveys and studies of lapse behavior). As Professor Merrill explained, the relevant academic and professional surveys and studies show that policyholders choose to let their policies lapse because of rising costs, changes in income or other financial circumstances, new employer coverage, and similar factors. 3-ER-465-466, 3-ER-477, 3-ER-481-482.

Take the example of term life insurance. Studies show that lapses dramatically increase near the end of the level-premium period—right before premiums would

increase dramatically. 3-ER-465-466, 3-ER-482-483. This pattern indicates that policyholders are making knowing, rational choices to let their policies lapse, not doing so accidentally. 3-ER-466, 3-ER-482-484. Allianz Life's own data in this case is entirely consistent with the pattern of knowing decisions. For example, the average duration of Allianz Life 10-year term life policies at issue was 9.3 years, and 64% of those policies terminated within the six-month period surrounding the end of the policies' 10-year fixed-premium term. 3-ER-489. As Professor Merrill concluded, this strongly evidences that the policy owners were deliberately lapsing their policies to avoid much higher renewal premiums after the initial term. 3-ER-489; *see also* 3-ER-467, 3-ER-491-492 (showing an average increase in premiums of 1047% for term life policies in the random sample that were terminated at the end of level term coverage).

Professor Merrill also analyzed a sample of universal life and term life policies underlying the class claims in this case to assess whether Allianz Life's records revealed evidence of knowing or intentional lapse or other termination. To perform the analysis, Professor Merrill pulled policy files and associated call recordings for 100 randomly selected policies from a list of policies terminated with a lapse designation in Allianz Life's policy administration system. *See* 3-ER-485-589. The review and analysis of each policy file took approximately 3.5 hours on average. 3-ER-486. Many of the files in the sample contained affirmative requests by policy owners to terminate their policies, including explicit surrender requests and expressions of intent to lapse. *See* 3-ER-467-468, 3-ER-487, 3-ER-489-490, 3-ER-492-497, 3-ER-511-519.

11

Many additional files showed active policy owner communications close to the time of termination, including calls to Allianz Life representatives to discuss continued insurance options, requests to stop automatic payment of premiums by electronic funds transfer, and notices from other insurers that the policy owner was seeking replacement coverage. 3-ER-489-490, 3-ER-477, 3-ER-481-482. Still other files demonstrated that policy owners used their universal life policies' loans feature to fund expenditures, which is a method of withdrawing cash that can serve as an alternative to withdrawal by surrender. 3-ER-468, 3-ER-560-561.

In addition to Professor Merrill's analysis, Allianz Life submitted the declaration of a corporate representative attaching policy files and descriptions or transcripts of call recordings showing that many policies within the certified classes were almost certainly terminated voluntarily. 4-ER-724-728 at ¶¶55-76 & 4-ER-615-680 (Exs. 20-35). Here are several examples:

- A policy owner who had earlier reassigned the policy as collateral for a premium finance loan, requested a full surrender due to funding problems with the life insurance trust. Allianz Life shortly thereafter wired $2,523,049.83, accomplishing a full surrender. 4-ER-726, ¶65; 4-ER-658-661.

- Two policy owners asked Allianz Life to stop automatic premium payment drafts from their bank account and cancel their policies, one by phone, and the other by written request to "cancel immediately." Allianz Life processed

both requests as surrenders accompanied by the return of residual value and/or unearned premium.  *See* 4-ER-725, ¶¶58-62, 4-ER-667-680 (Exs. 20-24).

- In some cases, policy owners (or a representative) who requested cancellation after receiving notice of an increase in required premium were advised to simply let their policies lapse because there was no residual value to return.  4-ER-726-727, ¶¶66-67, 71-72, 4-ER-650-657 (Ex. 28-29), 4-ER-636-640 (Exs. 33-34).  In one instance, the daughter of the insured had the following exchange with an Allianz Life representative:  Q "I don't think it's worth it because the policy is only worth $25,000. . .So I don't want to pay this anymore so what would I do?  A.  Nothing.  Q.  Nothing?  So I will just keep on getting these notices then?  A. Yes ma'am.  The next notice will just tell that the policy lapsed."  4-ER-727, ¶72.

- Some policy files showed that lapses are often associated with policy owners seeking replacement policies from other insurers.  See 4-ER-726-747, ¶¶68-69, 73, 4-ER-641-649 (Exs. 30-32).  For example, in connection with one policy coded as lapsed, Allianz Life received a notice that the policy owner may replace coverage with a policy from another insurer, followed by a letter five weeks later stating "Please let this notice serve as termination of my Life Insurance with Allianz . . . effective immediately." 4-ER-726-727, ¶¶68-70, 4-ER-641-649 (Exs. 30-32).

- In connection with another policy coded as lapsed, a policy owner sent a letter to Allianz Life requesting cancellation with the explanation: "I know [sic] longer need this policy and want to receive the balance coming to me. Allianz processed this as a surrender, returning the residual policy value to the owner. 4-ER-725-726, ¶¶63-64, 4-ER-664-668 (Exs. 24-25).

The corporate representative also explained that Allianz Life's policy administration system does not have specific codes to distinguish voluntary from involuntary lapses or address other specific circumstances surrounding termination, which sometimes results in the assignment of lapse codes that do not fully or accurately reflect the nature of the termination. For example, she described one policy administratively coded as lapsed (and subject to the Beneficiary Subclass's claims for damages) where Allianz Life had paid out *full death benefits* to the owner before his death under a terminal illness rider, after which the policy had no value and terminated with a lapse code. 4-ER-728, ¶74.

## III. Procedural History

### A. The Small Policy and Plaintiff's Complaint

Plaintiff was the beneficiary of a universal life insurance policy issued in 1990 (the "Policy"), insuring the life of her then-husband, Carl Small, who was the sole

owner.[1] 4-ER-692-711. The Policy provided a 61-day grace period that commenced when the policy failed either of two policy value funding tests, which Allianz Life assessed on a monthly anniversary date. 4-ER-705; 4-ER-717, ¶24.

Because neither Mr. Small nor Plaintiff provided Allianz Life with an updated address for Mr. Small from 2001 until after lapse, Allianz Life's "last known address" for Mr. Small—where the contract required notices to be sent (4-ER-710)—was not where he actually resided. Plaintiff and Mr. Small separated in 2001 and later divorced, and Mr. Small eventually moved to Nevada, and Plaintiff to a new address in California. 2-ER-249-254 at 14:11-15:11, 16:8-17:11, 18:10-19:20. In the intervening years from around the separation until after the lapse, neither Mr. Small (the owner) nor Plaintiff (the beneficiary) provided updated address information for Mr. Small to Allianz Life. 2-ER-284-285 at 49:22-50:3; 3-ER-329-330 at 93:1-94:40;4-ER-715-716 at ¶¶9-10.

When the company received an updated address from the U.S. Postal Service for Mr. Small at *Plaintiff's* new residence, it sent all future correspondence to that address. 4-ER-716 at ¶¶12-13; 4-ER-681-690. Plaintiff admitted that the address Allianz Life used was an accurate street address for her except for the inclusion an extraneous apartment number. 3-ER-328-329 at 92:10-93:13. And Allianz Life never

---

[1] Mr. Small also designated Plaintiff as an "other insured" under the Policy, which provided limited term life coverage on her life, but, as explained later, *see infra* at p. 41, only Mr. Small was a policy owner.

received notification that the mail was undeliverable. 4-ER-716 at ¶13. Plaintiff

nonetheless claims that she never received any such correspondence there. 2-ER-259

at 24:10-12, 24:18-20; 2-ER-287-288 at 52:19-53:8.

Plaintiff testified that she did not know whether or who Mr. Small would have

designated as a backup recipient for notice had he received an Annual Reminder. 3-

ER-308 at 72:4-13.

The Policy lapsed in August 2016. Plaintiff made a claim on the Policy after

Mr. Small's death in 2019. 4-ER-801, ¶32.

Plaintiff filed this lawsuit in the Central District of California in February 2020.

Count III asserts a breach of contract claim. 4-ER-809-810, ¶66. Count IV asserts

claims under the UCL's "unlawful" prong for alleged violations of the Statutes. 4-ER-

812 at ¶76.[2] Counts I and II seek declaratory relief that the Statutes applied to Allianz

Life's policies "in force as of or at any time after January 1, 2013" and a "judicial

declaration of the parties' rights and duties." 4-ER-807-809, at ¶¶58, 63. Throughout

the case, Plaintiff has acknowledged that her individual claim was based only on a

breach of the Annual Reminder requirement. 2-ER-189-200 (Plaintiff's interrogatory

answers identifying the sole statutory breach relevant to her claim (almost 3 years after

---

[2] The district court dismissed claims under the UCL as to the "unfair" and
"fraudulent" prongs pursuant to Federal Rule of Civil Procedure 9(b) and struck
Plaintiff's prayer for injunctive relief for lack of standing. 4-ER-788-789. Plaintiff
subsequently filed claims for injunctive relief under the UCL in California Superior
Court based on identical allegations, where the claims remain pending and subject to
an agreed-upon stay.

filing) as Allianz Life's termination of the policy "without first providing notice of the policy owner's right to designate a third party to receive notice of pending lapse in 2013, 2014, 2015 or 2016"); 4-ER-767 (Plaintiff's motion for class certification describing the statutory breach as that "Allianz never notified Plaintiff or her late husband of the ability to designate a third-party to receive notices of pending lapse"); 2-ER-68 (Plaintiff's reply in support of motion for summary adjudication arguing that the statutory basis for the Beneficiary Subclass was that "Allianz did not provide the class policyowners notice of a right to designate a third party to receive notices of pending lapse. This violation invalidates Allianz' termination.")

### B. Class Certification

#### 1. Plaintiff's Motion for Class Certification

In December 2022, Plaintiff moved for class certification under both Rule 23(b)(2) and (b)(3) of a single class consisting of "all owners, or beneficiaries upon a death of the insured, of" Allianz Life life insurance policies issued before January 1, 2013 that Allianz Life "lapsed or terminated for the nonpayment of premium…without first complying with all the requirements of" the Statutes. 4-ER-767. Plaintiff claimed that she could prove that "it was not until October 2021 that Allianz first began to comply with 'The Statutes' [Annual Reminder] requirements or institute 60-day grace periods," and that Allianz Life had produced a list of policies "affected" by Allianz Life's alleged noncompliance. 4-ER-782. However, she offered proof only that Allianz Life had not undertaken to affirmatively distribute annual

17

reminders to *all* owners of pre-2013 policies until after the California Supreme Court's decision in *McHugh*. See 4-ER-771.[3] Moreover, Plaintiff did not support the assertion that the list produced to Plaintiff contained policies "affected by" alleged noncompliance. Indeed, Allianz Life had made clear in its discovery responses that the policy list contained all terminations assigned a policy administrative systems status code indicating a lapse, *irrespective of any individual analysis of statutory compliance*, much less conclusions about injury or causation. 4-ER-720, ¶40, 4-ER-724, ¶55;4-ER-612-613 (Jorden Decl.) ¶¶3 & 4; 2-ER-216-217; 2-ER-180.

### 2. The District Court's Class Certification Order

On May 24, 2023, the district court, in an eight-page opinion and order, granted the motion to certify. Although Plaintiff requested certification of a single class, the district court on its own initiative created and certified the following two subclasses:

> Sub-class 1: All owners of Defendant's individual life insurance policies issued in California before 2013, with currently living insureds, that Defendant lapsed or terminated for non-payment of premiums in or after

---

[3] In the factual background statement of her motion for class certification, Plaintiff asserted that it was not until October 2021 that Allianz Life "first began to institute administrative controls providing 60-day grace periods, regardless of the contractual terms of the pre-2013 life insurance policies (*e.g.*, policies originally written with 30-day grace periods)." 4-ER-771. Although Plaintiff's unorthodox construction of that sentence may be intended to confusingly *suggest* that none of Allianz Life's policies provided 60-day grace periods to any class members, the supporting materials demonstrate that Plaintiff's assertion applied only with respect to "policies originally written with 30-day grace period," *i.e.*, term life—not universal life—policies. *Id.*

2013 without first complying with the requirements of Cal. Ins. Code §§ 10113.71 and 10113.72.

Sub-class 2: All beneficiaries of Defendant's individual life insurance policies issued in California, with deceased insureds, that Defendant lapsed or terminated for non-payment of premiums in or after 2013 without first complying with the requirements of Cal. Ins. Code §§ 10113.71 and 10113.72.

1-ER-14, 1-ER-18-19.

In adopting these definitions, the district court allowed Plaintiff to represent owners of policies with living insureds, even though Plaintiff herself is a beneficiary of a policy with a deceased insured. The district court also allowed Plaintiff to represent anyone who alleged **any** procedural violation under the Statutes, including violations different than the single violation Plaintiff alleged.

The district court's Rule 23(a) analysis was tersely expressed. It identified, without further explanation, just one purportedly "common" question: "whether all class members were harmed by Allianz's alleged failure to comply with the Statutes." 1-ER-15. The court did not address how injury and causation were affected by different alleged failures to comply, or how those elements would differ for owners who terminated or lapsed their policies intentionally. Addressing typicality, the district court found that Plaintiff could serve as the representative of the Living Insured Subclass because her injury stemmed from the "same injurious course of conduct"—Allianz Life's alleged "failure to comply with the Statutes." 1-ER-15-16.

The district court thus permitted a beneficiary whose sole remedy is damages to represent owners seeking solely declaratory relief to which she is not entitled.

In addressing Rule 23(b)(3)'s requirements, the district court did not discuss how the underlying elements of Plaintiff's claims could be proven with common evidence. Instead, the court stated that the "central issue" necessary to resolve the breach of contract and UCL claims was "whether Allianz had a *corporate policy* to terminate life insurance policies for non-payment of premiums without first complying with the Statutes." 1-ER-17 (emphasis added)

The district court acknowledged that Allianz Life had submitted an expert report and other evidence that lapses are often knowing and intentional, but it did not discuss how this evidence affected the causation, injury, and performance elements of the claims. 1-ER-17. Nor did it address evidence and argument submitted by Allianz Life that Plaintiff's and Mr. Small's failure to provide a valid address after they both moved undermined any causal link between a statutory violation and lapse. It appears that the district court viewed all of Allianz Life's submissions as relevant, if at all, only to "the presence of individualized damagers," not liability. 1-ER-17.

The district court' discussion of Rule 23(b)(2)'s requirements, contained in 5 lines of text, simply concluded that certification was "appropriate only for the subclass with living insureds" but not the subclass with deceased insureds, because the latter group had an adequate remedy at law in the form of money damages. 1-ER-18. The

court stated that these class members would be entitled to declaratory relief and "to have their policies reinstated upon payment of unpaid premiums." 1-ER-14.

On June 6, 2023, Allianz Life timely filed a Rule 23(f) petition for permission to appeal, which this Court granted, and two days later it filed a motion to stay the proceedings in the district court. The district court denied that motion but "with leave to renew if the Ninth Circuit grants the petition." 2-ER-150. The district court ultimately ordered a stay after this Court granted Allianz Life's petition.

## C. The District Court's Summary Judgment Ruling

Shortly after the district court's certification order, and as required by the June 15, 2023 dispositive motions deadline, Allianz Life and Plaintiff both filed summary judgment motions. Allianz Life expressly stated, however, that the Court should not rule on the merits of Plaintiff's motion until after distribution of class notice. 2-ER-158 at n.1; 2-ER-95, 2-ER-117 (objecting to Plaintiff's motion for summary judgment on one-way intervention grounds)). Plaintiff raised the same objection to a ruling on the merits of Allianz Life's statute of limitations defense in its opposition to Allianz Life's motion. 2-ER-145. In their reply memoranda filed on August 4, 2023, ***both parties*** requested that the Court defer ruling on the merits until after notice had been sent. 2-ER-53 at n.9, 2-ER-84.

Nevertheless, on August 25, 2023, before notice was sent, the district court ruled on the parties' motions. The court granted partial summary judgment on liability for breach of contract to the Beneficiary Subclass and for declaratory relief to

the Living Insured Subclass, and it also granted partial summary judgment to Allianz Life with respect to its classwide statute of limitations defense. 2-ER-29-30. The court also found that neither Plaintiff nor other members of the Beneficiary Subclass were entitled to relief under the UCL, 2-ER-29-30, and in an amended and superseding order also formally granted summary judgment in Allianz Life's favor on the UCL claim. 1-ER-2-11.

## SUMMARY OF ARGUMENT

The district court's certification order should be reversed on four, independent grounds.

***First***, the claims Plaintiff seeks to assert on behalf of *both* of the certified subclasses are inherently individualized and therefore preclude a finding of commonality, predominance, and superiority. The central reason is that many class members deliberately chose to stop making premium payments as a way to terminate their insurance coverage. Given that undisputed fact, neither injury nor causation (both of which must be established for the class to prevail in its breach of contract claims) can be established with identical or common proof. Moreover, even if Plaintiff could identify *some* common question, both the number and the legal significance of the individualized questions queued for resolution in the Beneficiary Subclass would overwhelm that common query, thereby destroying predominance and rendering a class action an inferior way to resolve the claims of Beneficiary Subclass members.

***Second***, typicality and adequacy are also lacking, because Plaintiff herself alleges only one of the five statutory violations encompassed by the class definition, whereas individual absent class members may seek to assert different or additional injuries that Plaintiff does not share.  Because her effort to prove an Annual Reminder violation will do nothing at all to establish any of the four other violations potentially at issue here, her claims are not typical, and she cannot proceed to represent *either* subclass.  She also is not typical of, or adequate to represent, the Living Insured Subclass, because she is not a member of that subclass.  She is the beneficiary of a deceased insured, and thus cannot seek the only relief the Living Insured Subclass may pursue:  declaratory relief concerning a policy as to which the insured is still living.

***Third***, the district court erred as a matter of law in certifying a (b)(2) subclass because there is no uniform, indivisible relief that could benefit the entire subclass at once, given that many individuals voluntarily ceased payment on their policies; did not want to continue their coverage; and would not want to resuscitate their policies now—particularly because doing so could trigger an obligation for them to pay back-owed premium on any policy so restored.  Furthermore, any such restoration-of-policies relief would be in the nature of specific performance—a form of redress that would require consideration not just of the elements of a breach of contract (which, as already noted, cannot be established classwide) but also various equitable criteria, such as the inadequacy of legal remedies.

*Finally*, the district court also violated the clear rule against permitting one-way intervention, despite express requests from both parties that it defer ruling on summary judgment until after class notice had been sent and the opt-out period had closed. The best remedy for that error (which the Court need not reach if it sets aside class certification on one or more of the grounds discussed above) is decertification of the class and preclusion of any future motion for certification in this case. Such relief would preserve the substantive rights of all parties and minimize the impact of the district court's error on the ultimate resolution of Ms. Small's individual claims.

## LEGAL STANDARD

This Court reviews the district court's class certification ruling for abuse of discretion—which includes but is not limited to errors of law. *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020); *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 984 (9th Cir. 2015). Before certifying a class, a district court must ensure, through a rigorous analysis, that the class satisfies the prerequisites of Rule 23. *Kim*, 87 F.4th at 999–1000. A district court's decision certifying a class will be reversed if the district court identified or applied the incorrect legal rule, or its "resolution of the motion resulted from a factual finding that was illogical, implausible, or without support in inferences that may be drawn from the facts in the record." *United States v. Hinkson*, 585 F.3d 1247, 1263 (9th Cir. 2009) (en banc).

# ARGUMENT

**I.  Class certification should be reversed because the district court erred in holding that Rule 23's commonality, predominance, and superiority requirements were satisfied.**

As numerous courts have observed, Rule 23's commonality and predominance requirements are closely linked, in that both focus on the existence and significance of the common, class-wide elements of the class's claims.  *See, e.g., Howard v. Cook Cnty. Sheriff's Off.*, 989 F.3d 587, 598 (7th Cir. 2021) ("The defendants' appeal centers on three of Rule 23's requirements: commonality, typicality, and predominance. These requirements overlap, so they often rise or fall together."); *In re LifeUSA Holding Inc.*, 242 F.3d 136, 144 (3d Cir. 2001) (observing that "the Rule 23(b)(3) predominance requirement incorporates the commonality requirement of Rule 23(a)" (emphasis omitted)).

The subclasses at issue here fail both requirements.  Neither subclass can satisfy the commonality requirement, and the Beneficiary Subclass's damages claims are plagued by so many individualized issues that predominance (and superiority) are lacking as well.  The district court erred as a matter of law in holding otherwise.

## A.  The district court did not identify any truly common question, as Rule 23(a)(2) requires.

Rule 23(a)(2) requires proof that "there are questions of law or fact common to the class."  Whether a question is "common" or "individual" turns on how the answer to that question will be established for any given class member.  An individual

question is "one where 'members of a proposed class will need to present evidence that varies from member to member,'" whereas a common question is one where "'the issue is susceptible to generalized, class-wide proof.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:50, pp. 196-97 (5th ed. 2012)) (alteration in original)

The district court identified only a single question as common: "[w]hether all class members were harmed by Allianz's alleged failure to comply with the Statutes." 1-ER-15. That question is not common, however, because it will require "members of [the] proposed class…to present evidence that varies from member to member." *Tyson Foods*, 577 U.S. at 453. Allianz Life provided the district court with unrebutted evidence showing that many policy owners affirmatively chose to terminate their policies by ceasing payment of their premiums or demanding cancellation. *See supra* at pp. 10-14. This individual evidence establishes the lack of injury and causation. Owners who intentionally terminated their policies suffered no injury, let alone an injury caused by Allianz Life's failure to meet one or more of the Statute's five new notice and grace-period requirements. Injury and causation are therefore individual issues, not common issues, and the district court erred as a matter of law and abused its discretion in holding otherwise.

### B. Common questions do not predominate in the Beneficiary Subclass, as Rule 23(b)(3) requires.

The district court also erred in finding that the Beneficiary Subclass met Rule 23(b)(2)'s predominance and superiority requirements, and for similar reasons. Injury and causation are individual questions that must be answered to establish liability, and when liability turns on individual questions, common questions do predominate.

The "predominance element is 'far more demanding'" than "Rule 23(a)'s commonality requirement." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623-24 (1997). It requires assessing whether "the common, aggregation-enabling, issues in [a] case are more prevalent or important than the non-common, aggregation-defeating, individual issues." *Lara v. First Nat'l Ins. Co. of Am.*, 25 F.4th 1134, 1138 (9th Cir. 2022). To make that assessment, the court must start by examining the "elements of the underlying cause of action" and must consider how those elements will be established for the proposed class. *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 809 (2011).

Most critically, the breach of contract claims raised by beneficiaries of lapsed policies whose insureds are deceased require both cognizable harm and a causal link between the asserted statutory violation and that alleged harm. *See Oasis W. Realty, LLC v. Goldman*, 250 P.3d 1115, 1121 (Cal. 2011) (setting forth "resulting damages" to the plaintiff from the defendant's breach as an element of breach of contract claim); *Troyk v. Farmers Group, Inc.*, 171 Cal. App. 4th 1305, 1352 (2009) (stating that a breach

of contract claims requires proof "that the defined breach caused the plaintiff's damages.").

In cases where establishing injury and causation for each class member requires individualized proof, this Court has routinely found predominance lacking. *Bowerman v. Field Asset Servs., Inc.*, 60 F.4th 459, 470-71 (9th Cir. 2023) (holding in employee-misclassification case that although issue of misclassification was common, whether that misclassification had caused injury was individual and precluded certification); *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1189 (9th Cir. 2001) (affirming class certification denial where, in, determining causation and damages for the class, "it is inescapable that many triable individualized issues may be presented"), *amended*, 273 F.3d 1266 (9th Cir. 2001).

Such is the case here. As the record shows, many policy owners **wanted** their policies to terminate and consciously chose—sometimes in consultation with Allianz Life personnel—to stop making payments to effectuate that termination. *See* 3-ER-737-738, 3-ER-746-748; *see also* 3-ER-724-728 (Allianz declaration), 3-ER-615-680 (policy file documents), 3-ER-492-497, 3-ER-511-518 (Merrill Report). Such owners (and by extension their beneficiaries) suffered no injury—let alone an injury caused by a statutory violation regarding notice of nonpayment or a grace period.

Indeed, Allianz Life's expert randomly sampled 100 policies and determined that at least 79 of them had evidence indicating the owner's knowing and deliberate termination (*see* 3-ER-487-488, 3-ER-490-508, 3-ER-511-576)—with 15 containing

clear communications with the policy owner (or his representative) requesting

cancellation or expressing an intention not to pay premium and thus let the policy

lapse. 3-ER-492-497, 3-ER-511-518. These conclusions were bolstered by policy-file

documents Allianz Life also submitted in opposition to class certification. *See supra* at

13-14; *see also* 4-ER-724-728 at ¶ 55-73 (Allianz declaration), 3-ER-615-680 (policy file

documents). As explained in detail in Professor Merrill's report, many additional

policy files contain other evidence suggesting voluntary termination by the policy

owner that would need to be explored in discovery and presented at trial. *See* 3-ER-

497-506 (summarizing and providing detail on term life policies), 3-ER-519-559

(summarizing and providing detail on universal life policies). The upshot is that a

significant portion of the beneficiaries included in the Beneficiary Subclass were in no

way injured by a statutory violation.

The causation issue is similarly plagued by individualized questions, both across

the different procedural violations alleged (as some beneficiaries may allege statutory

violations other than the Annual Reminder violation that Plaintiff alleges) and within

each type of violation. Consider, for example, a beneficiary who alleged that the

policy owner did not receive a 60-day grace period. But what if the owner no longer

wanted his policy? If that were so, a longer grace period would have made no

difference. A longer period also would have made no difference if the owner lacked

money to make the payment because of changed financial circumstances. Individual

facts like these make causation an individual issue.

The individual nature of proving causation is especially pronounced for claims predicated on an Annual Reminder violation like the one Plaintiff alleges. For this type of violation, proving causation requires proof that (1) the owner would have received *and read* the Annual Reminder of the right to designate a third party to receive notices if it had been sent; (2) the owner would have designated a third party to receive notice; (3) the third party would have received *and read* any Pre-Termination Notice(s) sent; and (4) the third party would have caused the premiums to be paid, thus preventing the policy from terminating. None of these steps can be proven with common evidence. Causation is a question for individual litigation.

There are myriad individual facts that could lead a jury to conclude that any violation of a new notice or grace-period requirement made no difference. For example, call recordings and information in the owner's possession could show that a policy owner obtained coverage from another insurer near the date of the lapse. Or financial information or emails or a deposition could show that the owner had a change in financial circumstances (for good or bad) that rendered paying for life insurance unnecessary or undesirable. Resolving these causation issues would swamp any common issue of what Allianz Life's "corporate policy" was on giving notice or providing grace periods, even assuming that the existence of such a policy was relevant to the question of breach. *See Campion v. Old Republic Home Prot. Co.*, 272 F.R.D. 517, 531 (S.D. Cal. 2011) ("[E]ven if Defendant has a uniform policy that encourages the wrongful denial of claims, the mere existence of this policy would not

prove on a class-wide basis that claims were wrongfully denied or inappropriately handled.").

Nor can the predominance of individual questions be ignored by recasting liability questions as damages issues, as the district court did. *See* 1-ER-17. This Court's decision in *Lara v. First Nat'l Ins. Co. of Am.,* which affirmed the denial of class certification of a proposed class of insureds seeking damages on breach of contract claims founded on alleged state insurance code violations, is instructive. 25 F.4th 1134 (9th Cir. 2022). The *Lara* court refused to accept plaintiffs' relabeling of merits questions concerning causation and injury as "'damages issues' that can be tried separately," observing that plaintiff's argument was "not right either: if there's no injury, then the breach of contract and unfair trade practices claims must fail. That's not a damages issue; that's a merits issue." *Id.* at 1139. It agreed with the defendants that the plaintiffs' request to ignore the issue of resulting harm from a statutory violation was "essentially ask[ing] for a strict liability remedy which is not provided by their causes of action." *Id.* at 1140.

Finally, the need to resolve a litany of individual issues of fact and law concerning breach, injury, causation, and performance for each member of the Beneficiary Subclass would require mini-trials about each policy owner's (and often beneficiary's) unique individual circumstances and experience, making the action unmanageable and an inferior method of adjudication.

In conclusions, injury and causation are core elements of establishing liability on Plaintiff's and each of the Beneficiary Subclass members' claims. For a class to be certified on those claims, the record must show that injury and causation will be resolved with common, classwide proof. That is not what the record shows. The order certifying a class must therefore be reversed.

**C. The Statutes do not prescribe a perpetual coverage remedy for each statutory violation or excuse proof of injury, causation and other elements of each subclass member's claims.**

Plaintiff will likely argue that proof of causation is not required because the mandatory consequence of any violation of any of the Statutes' five new requirements is a grant of perpetual life insurance coverage. The district court appears to have accepted this argument when it entered summary judgment on liability. But the argument is legally incorrect.

The basis of Plaintiff's argument is statutory language addressing one (and only one) of the five new requirements—the requirement to send a Pre-Termination Notice. Regarding that Notice, Section 10113.71(b)(1) states: "A notice of lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer…at least 30 days prior to the effective date of termination." Cal. Ins. Code § 10113.71(b)(1). Similarly, Section 10113.72(c) states: "No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the

policy owner [and any third party designated pursuant to § 10113.72(a)]…." Cal. Ins. Code § 10113.72(c).

For two key reasons, this language does not create the mandatory remedy of perpetual life insurance coverage for any statutory violation, as Plaintiff. **First**, the not-effective language applies to only one statutory requirement—the requirement to send a Pre-Termination Notice. The Legislature did not enact similar language for any of the four other new requirements. Most importantly for Plaintiff, there is no similar language for the Annual Reminder requirement, which is the only requirement she alleges a breach of. Thus, whatever the effect of that language on a claim for violation of the Pre-Termination Notice requirement, the absence of that language from the other provisions shows that the Legislature meant to treat them differently. "Where . . . the Legislature has chosen to include a phrase in one provision of the statutory scheme, but to omit it in another provision, we presume that the Legislature did not intend the language included in the first to be read into the second." *Walt Disney Parks & Resorts U.S., Inc. v. Superior Ct.*, 21 Cal. App. 5th 872, 879 (2018). "Courts will not impose penalties for noncompliance with statutory provisions in addition to those that are provided expressly or by necessary implication." *Granberry v. Islay Invs.*, 9 Cal. 4th 738, 747 (1995). As the district court in *Steen v. Am. Nat'l Ins. Co.*, observed, "[t]he other subdivisions of the Statutes impose different contractual obligations on insurers, but none of those subdivisions contain any language about

rendering lapse or termination ineffective." No. 20-cv-11226, 2023 WL 4004192, at *2 (C.D. Cal. June 14, 2023).

Thus, while the California Supreme Court described the Statutes as creating "a single, unified pretermination notice scheme," *McHugh,* 494 P.3d at 41, the Court did not hold that violations of different requirements all have the same remedy.

**Second**, the Statutes do not create any private right of action, and they do not supersede the elements of the causes of action that plaintiffs may use to assert claims for statutory violations. Thus, even for the Pre-Termination Notice requirement— which to repeat, is not at issue for Plaintiff—the Statutes do not mandate perpetual life insurance coverage regardless of proof of injury and causation. A claim for breach of contract, for example, requires proof not only of breach but also injury and causation. Although a statutory violation may provide the element of "breach," it cannot supply proof of injury or causation, and there is no basis for reading the Statutes to override those elements. The Court should not accept Plaintiff's invitation to create a private right of action under the Statutes that the California Legislature chose not to create. "If the statute itself does not display an intent to create a private remedy, then a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute." *Ziglar v. Abbasi*, 582 U.S. 120, 133 (2017) (quotations and citations omitted). The Court especially should not do so when other remedies, such as contract damages and specific performance, exist and have their own requirements.

This Court's one-page, unpublished, nonprecedential memorandum disposition in *Thomas v. State Farm Life Insurance Co.*, No. 20-55231, 2021 WL 4596286 (9th Cir. Oct. 6, 2021), does not hold otherwise. *Thomas* was not a class action, and the question of whether and when a causal link and materiality of the alleged breach must be established in connection with a claim for a violation of Section 10113.71 and 10113.72 was not squarely before the court. Indeed, the summary judgment dispute in *Thomas* was "solely" about whether the Statutes applied. *See Thomas v. State Farm Ins. Co.*, 424 F. Supp. 3d 1018, 1019 (S.D. Cal. 2019). To the extent *Thomas* comments on causation, the statement is dictum. Moreover, the statement regarding causation is supported only by a citation to *McHugh*, and *McHugh* **declined** to rule on the plaintiff's causation argument and instead remanded the case to the Court of Appeal. 494 P.3d at 44, n. 10. On remand, the Court of Appeal confirmed that, "in addition to proving [the insurer] breached the contract, *plaintiffs had the burden of proving they were harmed by the breach*," rejecting plaintiffs' argument that "failure to strictly comply left the policy in force" even if premiums are not paid. *McHugh v. Protective Life Ins.*, 2022 WL 6299640, at *7-8 & *9 (Cal. Ct. App. Oct. 10, 2022) (unpublished) (emphasis added). It not only disagreed with the plaintiffs' argument that the trial court should have instructed the jury otherwise, *id.*, it also rejected the argument (consistent with Plaintiff's position here) that "failure to strictly comply left the policy in force" when premiums are not paid. *Id.* at *7-8.

In short, a plaintiff asserting a claim for breach of contract based on an alleged violation of one of the Statutes' five new requirements must prove the elements of injury and causation. Because that cannot be done on a classwide basis, class certification is improper.

## II. Class certification should be reversed because the district court erred in finding that Plaintiff was typical of all class members and adequate to represent them.

### A. Plaintiff is not typical of either owners or beneficiaries who allege different statutory violations or whose policies were intentionally terminated.

Rule 23(a)(3) requires that "the claims or defenses of the representative part[y]" must be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Just as commonality seeks to ensure that absent class members all have "suffered the same injury" as one another, typicality seeks to ensure that the named plaintiff has "suffered the same injury" as the absent class members. *Gen. Tel. Co. of Sw v. Falcon*, 457 U.S. 147, 157-58 & n.13 (1982); *Wal-Mart*, 564 U.S. at 349-50 & n.5; *see generally* 7A Fed. Prac. & Proc. Civ. § 1764 (4th ed.) (typicality often "used to screen out class actions in which the legal or factual position of the representatives is markedly different from that of other members of the class even though common issues of law or fact are present"). Plaintiff is an atypical representative of other members of *both* Subclasses in at least two different respects.

**First**, Plaintiff is atypical of class members, regardless of subclass, who have grounds for alleging a different (or additional) statutory violation than the Annual-

Reminder violation that she asserts. That is because the class approved by the district court groups together in a single class every policyholder who allegedly suffered *any* violation of *any* of the Statutes' five protections. Plaintiff alleges only one such violation—and a hard-to-win one, at that. *See supra* at p. 30 (discussing the causation showing required to prevail on a breach-of-contract claim premised on an Annual-Reminder violation). Other class members, by contrast, may seek to assert multiple violations, including claims (*e.g.*, the failure to send a Pre-Termination Notice) that would not require such a daunting causation showing. Plaintiff has not "suffered the same injury" as such class members, would not be able to muster common proof that would establish both types of injuries, and would be subject to individual factual disputes about causation that may not apply to claimants who asserted different or additional statutory violations. *Falcon*, 457 U.S. at 157-58 & n.13.

The Supreme Court's decision in *Falcon* is instructive on this point. There, the Court found typicality lacking where the class representative personally asserted a Title VII *intentional-discrimination* claim (based on his status as a person of Mexican-American descent) but sought to represent other individuals of Mexican-American descent who sought to assert *disparate-impact* claims. 457 U.S. at 159 ("If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential companywide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation."). The class at issue here suffers from a

similar defect because the sole basis for breach that Plaintiff asserts (lack of an Annual Reminder) does not align with additional grounds for breach that other class members may assert—*e.g.*, the Grace Period and Overdue Premium Notice requirements. Because the specific statutory breach alleged will, in turn, dictate what each subclass member must prove in order to establish causation, *see supra* at pp. 29-30, Plaintiff's claims are not typical of all the members of either subclass.

**Second**, Plaintiff is atypical because the class contains many former policy owners who ***chose*** to end their insurance coverage by ceasing payment or by affirmatively cancelling the policy with Allianz Life (and in some cases receiving residual policy value). *See supra* at pp. 10-14. Termination-by-nonpayment is common in the life-insurance industry; and such individuals make up at least a significant segment, and likely the vast majority of, the putative class. 3-ER-475-484. For such policy owners, sending an Annual Reminder (again, the only deficiency Plaintiff herself alleges) or, for that matter, ***any*** other notice from Allianz Life would not have prevented termination of the policy, because the policy owner ***wanted*** the policy to terminate and knowingly took affirmative steps to effectuate that termination.

Simply put, Plaintiff and such individuals do not "'possess the same interest and suffer the same injury'" as each other and therefore are not "part of the [same] class." *Falcon*, 457 U.S. at 156 (quoting *E. Tex. Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)). It follows that typicality is lacking. *See Steen*, 2023 WL 4004192, at *6-7 (typicality lacking based on the "distinction between class members

who intended to allow policies to lapse and those who did not so intend" (typography omitted)).

**B.** **Plaintiff is not typical of or adequate to represent the subclass of owners of policies with Living Insureds because she is not a member of that subclass and is not entitled to the relief it seeks.**

The district court's certification order also cannot stand because it appoints Plaintiff to represent a subclass of the owners of policies with Living Insureds (Subclass 1), when she is not a member of that subclass and she is not entitled to the declaratory relief the subclass seeks. Under bedrock rules of typicality and adequacy of representation, Plaintiffs cannot represent that subclass.

Plaintiff is the beneficiary of a policy with a deceased insured. She therefore has not "suffered the same injury" as owners of terminated policies whose insureds are still living and is not typical of those owners. *See Falcon*, 457 U.S. at 157-58 & n.13. Indeed, as the district court rightly concluded, she is not even a *member* of the Subclass, *see* 1-ER-13-16, and that alone should have foreclosed any finding of typicality.

The same facts likewise render Plaintiff inadequate to represent the Living Insured subclass. Indeed, the foundational requirement of Rule 23(a)(4) is that the putative representative "must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem*, 521 U.S. at 625–26. In *Betts*, this Court therefore reversed a certification order when the putative class representative's claims had been dismissed, because the plaintiff "no longer qualified

as a member of the subclass he purported to represent." *Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981). In *Ellis v. Costco Wholesale Corp.*, this Court similarly reversed an order certifying a class for both damages and injunctive relief when the two named plaintiffs had left their employment and thus were not part of the injunctive-relief class because they lacked standing to seek that relief. 657 F.3d 970, 986 (9th Cir. 2011).

What is more, by appointing Plaintiff to represent ***two*** subclasses—one in which she has a vested self-interest and one in which she does not—the district court created a significant intra-class conflict that renders Plaintiff inadequate. *Hesse v. Sprint Corp.*, 598 F.3d 581, 589 (9th Cir. 2010) ("Class representation is inadequate if," *inter alia*, "the named plaintiff…has an insurmountable conflict of interest with other class members."); *see also Amchem*, 521 U.S. at 625 (the adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent").

Plaintiff, as a representative of both subclasses but a member of only one, will have every opportunity, as well as every incentive, to trade away the interests of the other subclass for the benefit of her own, whether in matters of litigation strategy and tactics or the negotiation of a possible future settlement. *See Hesse*, 598 F.3d at 589 ("[A]s a result of not possessing the same type of claim as [certain other class members], the [Named] Plaintiff had an insurmountable conflict of interest with those

members."). As such, she cannot adequately represent them both, and the district manifestly erred in appointing her to do so.

To the extent Plaintiff argues that she is an "owner" by virtue of her status as an "other insured," the argument is incorrect. The policy application lists **Mr. Small** as the sole owner of the policy at issue. 4-ER-836 (policy application providing that "You and your means the owner of this policy named in the application, unless later changed" and that the "owner is solely entitled to exercise all policy rights"); 4-ER-823 (application showing Mr. Small signing as "Proposed Insured," Plaintiff signing as "Spouse/Other Insured," and no signature on the line for "Owner (if other than insured"). The mere fact that Plaintiff's life was *insured* with term coverage under the policy does not confer ownership rights on her.

The district court saw the ownership issue the same way, describing Plaintiff as "an additional insured and the beneficiary of the Policy"—**not** its owner. 1-ER-12. It likewise recognized that Plaintiff's sole remedy would be contract damages and that she and other Beneficiary Subclass members would not be entitled to declaratory or any other equitable relief:

> If a putative class member's insured has died, **as is the case with Small**, the appropriate remedy, if the class prevails, would be breach of contract money damages….[B]ecause those damages would be adequate to redress the breach of contract harm, **those class members would not be entitled to equitable relief, which includes declaratory relief**.

1-ER-13-14 (emphasis added).

In sum, Plaintiff is not a policy owner and is not a member of the (b)(2) class certified by the district court, and it was therefore an abuse of discretion to appoint her as the representative of that class.

## III. The Rule 23(b)(2) subclass of Living Insureds should be decertified because the members are not entitled to indivisible injunctive relief.

A mandatory Rule 23(b)(2) injunctive-relief class cannot be certified without proof that the defendant has taken action that applies uniformly to the entire class, such as when an employer adopts a discriminatory hiring or promotion policy, or a state department of corrections houses prisoners in hazardous or unsanitary conditions. *See Wal-Mart*, 564 U.S. at 361 (observing that "civil rights cases against parties charged with unlawful, class-based discrimination are prime examples of what (b)(2) is meant to capture"); 7AA Fed. Prac. & Proc. Civ. § 1776.1 (3d ed.) ("[A] common use of Rule 23(b)(2) is in prisoner actions brought to challenge various practices or rules in the prisons on the ground that they violate the constitution."). In other words, "[t]he key to the (b)(2) class is the ***indivisible*** nature of the…declaratory remedy warranted—the notion that the [defendant's] conduct is such that it can be…declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (emphasis added).

Consequently, cases that would require individualized liability determinations, or require the court to craft an individualized injunction or declaration, cannot be maintained as a class action under Rule 23(b)(2). *See, Wal-Mart*, 564 U.S. at 360 ("Rule

23(b)(2) applies only when a ***single*** injunction or declaratory judgment would provide relief to ***each*** member of the class." (emphases added)); *id.* at 361-62 (citing other grounds for disallowing "the combination of individualized and classwide relief in a (b)(2) class," including the lack of historical precedent, the lack of mandatory notice to class members, and the inability of class members to opt out); *Ellis*, 657 F.3d at 987 ("claims for *individualized relief*…do not satisfy Rule 23(b)(2)" (cleaned up) (emphasis added)). Moreover, declaratory relief is appropriate only "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Guerra v. Sutton*, 783 F.2d 1371, 1376 (9th Cir. 1986).

The district court's certification of the Living Insured Subclass transgressed those limits in at least three respects. **First**, a mere declaration that Allianz Life committed a statutory violation—or even specifically an Annual Reminder violation— would serve no useful purpose because it would not obviate the need to have individual trials on both liability and remedy. Moreover, as demonstrated above, Plaintiff's strict liability theory does not apply in this case because it is predicated on statutory language only with the Pre-Termination Notice provision, whereas the class here was certified based on the Annual Reminder requirement. *See supra* at pp. 32-35. As a result, any meaningful declaratory relief would founder on the same

individualized issues that should have precluded a finding of commonality, typicality, and adequacy.

**Second**, a declaration that the policies are still in force could not be uniformly applied across the members of Living Insured subclass because many owners did not want coverage to continue and terminated their policies intentionally by ceasing premium payments. These owners cannot be forced to pay back-owed premiums for coverage they did not want. There is, in short, no "indivisible" declaration or injunction that would "benefit all of the class's members at once." *Wal-Mart*, 564 U.S. at 362.

**Third**, the remedy the district court ultimately envisioned, reinstatement upon payment of back-owed premiums, 1-ER-14, is quintessentially injunctive in nature. *Behniwal v. Mix*, 147 Cal. App. 4th 621, 638 (2007) ("[A]n action for specific performance affirms the contract and asks that it be performed." (emphasis removed)). To demonstrate a right to specific performance, Plaintiff must "prov[e] the elements of a standard breach of contract," plus "several" additional elements, *see Darbun Enters, Inc. v. San Fernando Cmty. Hosp.*, 239 Cal. App. 4th 399, 409 (2015), including that damages are inadequate. *See Tamarind Lithography Workshop, Inc. v. Sanders*, 143 Cal. App. 3d 571, 575 (1983) ("The availability of the remedy of specific performance is premised upon well established requisites," which include, "[a] showing by plaintiff of [] the inadequacy of his legal remedy"). Accordingly, merely

declaring that some statutory violation occurred would not obviate the need to have mini-trials on the other elements of a breach claim. *Guerra*, 783 F.2d at 1376.

The district court, however, did not consider the impact of these issues on certification. Indeed, its rationale for certifying the (b)(2) subclass was just two sentences long: "To certify a class under Fed. R. Civ. P. 23(b)(2), class-wide injunctive or declaratory relief must be appropriate. Fed. R. Civ. P. 23(b)(2). Here, certification under 23(b)(2) is appropriate only for the sub-class with living insureds." 1-ER-18. That discussion falls far short of the "rigorous analysis" that Rule 23 requires. *See Wal-Mart*, 564 U.S. at 350–51; *Ellis*, 657 F.3d at 980–84 (reversing district court for "fail[ing] to conduct the required 'rigorous analysis'" and for "relying" solely on "Plaintiffs' experts" without considering countervailing evidence).

Had the district court conducted a rigorous analysis of these issues, it would have reached the inescapable conclusion that a Rule 23(b)(2) class cannot be certified here. *See Ellis*, 657 F.3d at 987; *Jamie S. v. Milwaukee Pub. Schs.*, 668 F.3d 481, 499 (7th Cir. 2012) (noting that (b)(2) certification is improper where the "relief sought would merely initiate a process through which highly individualized determinations of liability…are made"). Phrased in the parlance of Rule 23(b)(2), it would not be "appropriate" to afford relief to uninjured class members, including those who did not and do not want resurrection of their policies, or to provide a declaration that will not materially advance the termination of the litigation. *See Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 892 (7th Cir. 2011); *Victorino v. FCA US LLC*, 326 F.R.D.

282, 307–08 (S.D. Cal. 2018) (rejecting 23(b)(2) class when injunction sought not

"applicable to the entire class"); *Cholakyan v. Mercedes-Benz USA, LLC*, 281 F.R.D. 534,

559 (C.D. Cal. 2012) (rejecting 23(b)(2) class when "no single declaration or

injunction sought would benefit the class as a whole"); *Kihn v. Bill Graham Archives

LLC*, No. 20-17397, 2022 WL 18935, at *3 (9th Cir. Jan 9, 2022) (reversing (b)(2)

certification where relief was contrary to the wishes of certain class members who

were unable to opt out of the mandatory class).

In sum, the same individualized issues that defeat commonality and

predominance also preclude certification under Rule 23(b)(2). The district court erred

as a matter of law in holding otherwise.

## IV. In the alternative, this Court should decertify the classes because the district court violated the one-way intervention rule.

After Allianz Life petitioned this Court for permission to appeal the district

court's grant of class certification, the district court further erred by violating the rule

against one-way intervention (*i.e.*, the rule that prohibits courts from deciding the

merits of class claims ***before*** class certification and related notice are complete). This

error further supports decertification in this case.

The rule against one-way intervention exists because it is "unfair to allow

members of a class to benefit from a favorable judgment without subjecting

themselves to the binding effect of an unfavorable one." *Am. Pipe & Constr. Co. v.

Utah*, 414 U.S. 538, 547 (1974). For instance, if there were a "favorable ruling on the

merits prior to certification--and its corresponding notice and opportunity to opt out--then class members are incentivized to remain in the lawsuit to take advantage of the favorable ruling." *Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1058 (7th Cir. 2016) (emphasis added). Conversely, if class members know their claims will fail on the merits before certification, they are incentivized to opt-out and preserve their ability to bring claims separately. As courts have long recognized, "[a]llowing class members to decide whether or not to be bound by a judgment depending on whether it is favorable or unfavorable is 'strikingly unfair' to the defendant." *Id.; Sprogis v. United Air Lines, Inc.*, 444 F.2d 1194, 1207 (7th Cir. 1971) (Stevens, J., dissenting). The rule against one-way intervention protects against this inequity by "bar[ring] potential class members from waiting on the sidelines to see how the lawsuit turns out" before deciding whether to intervene in a given action. *Amati v. City of Woodstock*, 176 F.3d 952, 957 (7th Cir.), *cert. denied*, 528 U.S. 985 (1999).

Here, the district court ran afoul of this rule and the equitable principles that motivate it. On August 27, 2023, while Allianz Life's Rule 23(f) petition to this Court was still pending and before class notice had gone out, the district court entered summary judgment in Plaintiff's favor on her individual breach-of-contract claim and the contract and declaratory-relief claims of the two certified sub-classes. 2-ER-29-30. It also granted Allianz Life's cross-motion for summary judgment on statute-of-limitations grounds, declaring time-barred all claims accruing before February 27, 2016, 2-ER-9, and in an amended, superseding order additionally granted summary

47

judgment to Allianz Life on the UCL claims. 1-ER-9-10. The court issued its summary judgment order *before* class notice could be sent, even though *both* parties objected to the court deciding the merits before the opt-out period closed. 2-ER-158 at n.1, 2-ER-145, 2-ER-117.

That sequencing (*i.e.*, merits before class notice has been distributed) has severely prejudiced Allianz Life by giving class members foreknowledge of how their claims will fare if they remain in the class. *Schwarzschild v. Tse*, 69 F.3d 293, 295 (9th Cir. 1995) (courts are forbidden from "grant[ing] summary judgment on the merits of a class action until the class has been properly certified *and notified*" (emphasis added)); *Villa v. San Francisco Forty-Niners, Ltd.*, 104 F. Supp. 3d 1017, 1021 (N.D. Cal. 2015) (rule exists to protect defendants from the "unfair" situation of class members being able to "opt in to a favorable ruling or avoid being bound by an unfavorable one").

Both parties agree that the district court has stepped into a one-way intervention violation. 2-ER-158 at n.1, 2-ER-145, 2-ER-117. As numerous courts have recognized, however, remedying a one-way intervention violation can be more difficult than identifying it. Here, the most appropriate viable remedy is for this Court to decertify the class and permit Plaintiff to proceed on her individual action *only*.[4]

---

[4] If the Court concludes, based on the various arguments set forth above, that certification is inappropriate here because the claims and class that Plaintiff proposes cannot be squared with the requirements of Rule 23, then it need not consider the question of what remedy should generally attach to a one-way intervention violation.

Precluding certification of a class *in the present case* has been recognized as an appropriate remedy for one-way intervention violations. *See Isaacs v. Sprint Corp.*, 261 F.3d 679, 682 (7th Cir. 2001) (granting Rule 23(f) petition in part because district court permitted one-way intervention); *cf. Costello*, 810 F.3d at 1058 (opining, on Rule 23(f) review, that if district court had decided summary judgment before class certification, "the rule against one-way intervention *may have precluded certification.*" (emphasis added)). Courts in this circuit have acknowledged that "[t]he 'one-way intervention rule' allows for decertification if potential class members are given the opportunity to 'await . . . final judgment on the merits in order to determine whether participation [in the class] would be favorable to their interests.'" *See Gonzales v. Arrow Fin. Servs. LLC*, 489 F. Supp. 2d 1140, 1156–57 (S.D. Cal. 2007), *aff'd.*, 660 F.3d 1055 (9th Cir. 2011).

Permanent intra-case decertification makes sense, because it eliminates the prejudice to the defendant while also not prejudicing either Plaintiff (whose individual action may proceed) or absent class members (who may still bring their own individual claims or have their claims pursued via a newly instituted class action with a different class representative). To be sure, there are inefficiencies in requiring the commencement of a new case, with a new putative class representative, but that modest loss of judicial efficiency is a reasonable price to pay for avoiding the far greater (substantive) unfairness of allowing a one-way intervention violation to go unchecked.

## CONCLUSION

Given the failure of the two certified subclasses to satisfy the requirements of Rule 23(a), (b)(2), and (b)(3), the district court's certification order should be reversed. Alternatively, if the Court does not reverse on the basis of Rule 23, it should hold that the district court violated the one-way intervention rule, reverse the order granting certification, and preclude any further efforts to certify a class in this case.

Date: February 22, 2024

FAEGRE DRINKER BIDDLE & REATH LLP

/s/ *Aaron D. Van Oort*
Aaron D. Van Oort
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center, 90 South 7th St.
Minneapolis, MN 55402
Telephone: (612) 766-7000
Aaron.vanoort@FaegreDrinker.com

Mark D. Taticchi
FAEGRE DRINKER BIDDLE & REATH LLP
One Logan Square, Suite 2000
Philadelphia, PA 19103
Telephone: (215) 988-2700
Mark.Taticchi@FaegreDrinker.com

Stephen J. Jorden
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street NW, Suite 1100
Washington, D.C. 20005
Telephone: (202) 842-8800
Stephen.Jorden@FaegreDrinker.com

*Counsel for Defendant-Appellant*
*Allianz Life Insurance Company of North*
*America*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

**9th Cir. Case Number(s)** _____ 23-55821 _____

The undersigned attorney or self-represented party states the following:

[ ] I am unaware of any related cases currently pending in this court.

[ ] I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

[X] I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

- *Farley v. Lincoln Benefit Life Co.*, No. 23-16224 – appeal from certification decision in case alleging violations of Cal. Ins. Code §§ 10113.71 & 10113.72.

- *Siino v. Foresters Life Insurance and Annuity Company*, No. 23-16176 – appeal from certification decision in case alleging violations of Cal. Ins. Code §§ 10113.71 & 10113.72.

- *Poe v. Northwestern Mutual Life Insurance Company*, No. 23-3243 – appeal from certification decision in case alleging violations of Cal. Ins. Code §§ 10113.71 & 10113.72.

**Signature** __/s/ Aaron D. Van Oort_____     **Date** _____ February 22, 2024 _____

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

**9th Cir. Case Number(s)** _____ 23-55821 _____

I am the attorney or self-represented party.

**This brief contains _____ 12,210 _____ words,** excluding the items exempted by

Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P.

32(a)(5) and (6).

I certify that this brief *(select only one)*:

[X] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _/s/ Aaron D. Van Oort_        **Date** _____ February 22, 2024 _____

## CERTIFICATE OF SERVICE FOR ELECTRONIC FILING

I, Aaron D. Van Oort, hereby certify that I electronically filed the foregoing Principal Brief on Appeal with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system on February 22, 2024, and it was thereby served on all counsel of record.

DATED: February 22, 2024      **FAEGRE DRINKER BIDDLE & REATH LLP**

By:    */s/ Aaron D. Van Oort*
      Aaron D. Van Oort

Attorney for Appellant
ALLIANZ LIFE INSURANCE COMPANY OF NORTH AMERICA

# STATUTORY ADDENDUM

# INDEX TO ADDENDUM

| Statute | Page |
|---|---|
| Cal. Ins. Code § 10113.71 | 1 |
| Cal. Ins. Code § 10113.72 | 2 |

West's Annotated California Codes
  Insurance Code (Refs & Annos)
    Division 2. Classes of Insurance (Refs & Annos)
      Part 2. Life and Disability Insurance (Refs & Annos)
        Chapter 1. The Contract (Refs & Annos)
          Article 1. General Provisions (Refs & Annos)

West's Ann.Cal.Ins.Code § 10113.71

§ 10113.71. Grace periods not less than 60 days from premium due date; notice of termination of policy

Effective: January 1, 2014

Currentness

(a) Each life insurance policy issued or delivered in this state shall contain a provision for a grace period of not less than 60 days from the premium due date. The 60-day grace period shall not run concurrently with the period of paid coverage. The provision shall provide that the policy shall remain in force during the grace period.

(b)(1) A notice of pending lapse and termination of a life insurance policy shall not be effective unless mailed by the insurer to the named policy owner, a designee named pursuant to Section 10113.72 for an individual life insurance policy, and a known assignee or other person having an interest in the individual life insurance policy, at least 30 days prior to the effective date of termination if termination is for nonpayment of premium.

(2) This subdivision shall not apply to nonrenewal.

(3) Notice shall be given to the policy owner and to the designee by first-class United States mail within 30 days after a premium is due and unpaid. However, notices made to assignees pursuant to this section may be done electronically with the consent of the assignee.

(c) For purposes of this section, a life insurance policy includes, but is not limited to, an individual life insurance policy and a group life insurance policy, except where otherwise provided.

**Credits**
(Added by Stats.2012, c. 315 (A.B.1747), § 1. Amended by Stats.2013, c. 76 (A.B.383), § 137.)

Notes of Decisions (32)

West's Ann. Cal. Ins. Code § 10113.71, CA INS § 10113.71
Current with Ch. 1 of 2023-24 1st Ex.Sess, and all laws through Ch. 890 of 2023 Reg.Sess.

End of Document        © 2024 Thomson Reuters. No claim to original U.S. Government Works.

App1

West's Annotated California Codes
  Insurance Code (Refs & Annos)
    Division 2. Classes of Insurance (Refs & Annos)
      Part 2. Life and Disability Insurance (Refs & Annos)
        Chapter 1. The Contract (Refs & Annos)
          Article 1. General Provisions (Refs & Annos)

West's Ann.Cal.Ins.Code § 10113.72

§ 10113.72. Individuals to receive notice of lapse or termination
of a policy; notification of right to change written designation

Effective: January 1, 2013

Currentness

(a) An individual life insurance policy shall not be issued or delivered in this state until the applicant has been given the right to designate at least one person, in addition to the applicant, to receive notice of lapse or termination of a policy for nonpayment of premium. The insurer shall provide each applicant with a form to make the designation. That form shall provide the opportunity for the applicant to submit the name, address, and telephone number of at least one person, in addition to the applicant, who is to receive notice of lapse or termination of the policy for nonpayment of premium.

(b) The insurer shall notify the policy owner annually of the right to change the written designation or designate one or more persons. The policy owner may change the designation more often if he or she chooses to do so.

(c) No individual life insurance policy shall lapse or be terminated for nonpayment of premium unless the insurer, at least 30 days prior to the effective date of the lapse or termination, gives notice to the policy owner and to the person or persons designated pursuant to subdivision (a), at the address provided by the policy owner for purposes of receiving notice of lapse or termination. Notice shall be given by first-class United States mail within 30 days after a premium is due and unpaid.

**Credits**

(Added by Stats.2012, c. 315 (A.B.1747), § 2.)

Notes of Decisions (31)

West's Ann. Cal. Ins. Code § 10113.72, CA INS § 10113.72
Current with Ch. 1 of 2023-24 1st Ex.Sess, and all laws through Ch. 890 of 2023 Reg.Sess.

End of Document

© 2024 Thomson Reuters. No claim to original U.S. Government Works.

App2